1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GABRIEL ECKARD,

                                    Plaintiff,

        v.

PAT GLEBE, WILLIAM SWAIN,
CHERYL ROIKO, JON GREEN,
BRUCE REIFENBERG,

                                    Defendants.

No. C14-5898 RJB-KLS

**REPORT AND RECOMMENDATION**
**Noted for:  October 23, 2015**

        Before the Court is Defendants motion for summary judgment.  Dkt. 25.  Defendants

contend that Plaintiff Gabriel Eckard, an inmate at the Washington State Reformatory in the

Monroe Correctional Complex (MOU), has failed to exhaust administrative remedies as to all but

one of his claims and that the one exhausted claim is without merit.  The undersigned

recommends that Defendants' motion for summary judgment be granted and this lawsuit

dismissed with prejudice as to Plaintiff's one exhausted claim relating to cell checks (June 2,

2014 to June 9, 2014) and without prejudice as to his remaining claims which are unexhausted.

## FACTS

**A.        Facts Relating to Exhaustion**

        According to Dale N. Caldwell, the Grievance Program Manager for the Department of

Corrections (DOC), the Washington Offender Grievance Program (OGP) has been in existence

REPORT AND RECOMMENDATION - 1

since the early 1980's and was implemented on a department-wide basis in 1984.  Dkt. 25-1, Exhibit 1, Declaration of Dale Caldwell, ¶ 3.  It has been found to be in compliance with federal law. The grievance program at each facility is managed in accordance with DOC 550.100, OGP, and the OGP Manual.  *Id.*; Attachment A, DOC Policy 550.100; Attachment B, OGP Manual in effect since July 1, 2013.

At the time of entry into the DOC, an offender is provided information about the OGP and advised that DOC Policy 550.100 and the OGP Manual are available for offenders to review in the library or law library.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 4; Attachment C, DOC Offender Grievance Program Handout that many facilities use as part of offender orientation.

Under the OGP, inmates may file grievances on a wide range of issues relating to their incarceration.  *Id.*, Exhibit 1, Caldwell Decl., ¶ 5.  For example, inmates may file grievances challenging: 1) DOC institution policies, rules and procedures; 2) the application of such policies, rules and procedures; 3) the lack of policies, rules or procedures that directly affect the living conditions of the offender; 4) the actions of staff and volunteers; 5) the actions of other offenders; 6) retaliation by staff for filing grievances; and 7) physical plant conditions.  *Id.*

An offender may not file a grievance challenging: 1) state or federal law; 2) court actions and decisions; 3) Indeterminate Sentence Review Board actions and decisions; 4) administrative segregation placement or retention; 5) classification/unit team decisions; 6) transfers; and 7) disciplinary actions.  *Id.*, Exhibit 1, Caldwell Decl., ¶ 6.

Under the OGP, a wide range of remedies are available to inmates. These remedies include: 1) possible restitution of property or funds; 2) correction of records; 3) administrative actions; 4) agreement by department officials to remedy an objectionable condition within a

REPORT AND RECOMMENDATION - 2

reasonable time; and 5) a change in a local or department policy or practice.  *Id.*, Exhibit 1, Caldwell Decl.,¶ 7.

The grievance procedure consists of four levels of review:

Level 0 - Complaint or informal level.  The grievance coordinator at the prison receives a written complaint from an offender on an issue about which the offender wishes to pursue a formal grievance.  *Id.*, Exhibit 1, Caldwell Decl., ¶ 8.  At this complaint level, the grievance coordinator pursues informal resolution, returns the complaint to the offender for rewriting, returns the complaint to the offender requesting additional information, or accepts the complaint and processes it as a formal grievance.  Routine and emergency complaints accepted as formal grievances begin at Level I, complaints alleging staff misconduct are initiated at Level II.  *Id.*

A complaint that has been returned for rewriting must be re-submitted within five days or on or before a date set by the Grievance Coordinator.  *Id.*, Exhibit 1, Caldwell Decl., ¶ 8.  A complaint that is not re-submitted within five days or a date set by the Grievance Coordinator will be administratively withdrawn.  A complaint that the Grievance Coordinator determines is non-grievable will be returned to the inmate.  Offenders may request a review by the Grievance Program Manager of a Grievance Coordinator's determination of "not grievable."  *Id.*

Level I - Grievances against policy, procedure, or other offenders, and grievances processed as emergencies.  The local grievance coordinator is the respondent at this level.  *Id.*, Exhibit 1, Caldwell Decl., ¶ 8.

Level II - Appeal. Inmates may appeal Level I grievances to Level II. Staff conduct grievances are initiated at this level.  All appeals and initial grievances received at Level II are investigated and the prison superintendent is the respondent.  Emergency grievances can only be appealed to Level II.  *Id.*, Caldwell Decl., Exhibit 1, ¶ 8.

REPORT AND RECOMMENDATION - 3

Level III - Appeal.  Inmates may appeal all Level II responses except emergency grievances to Department headquarters in Tumwater, where they are re-investigated. Administrators are the respondents.  *Id.*, Exhibit 1, Caldwell Decl., ¶ 8.

Since March 1, 2005, offenders have 20 working days from the date of an incident to file a grievance.  *Id.*, Exhibit 1, Caldwell Decl., ¶ 9.  An exception to this filing timeframe is allowed if there is a valid reason for the delay.  This timeframe does not apply to complaints against a specific written policy or procedure.  The Grievance Coordinators are authorized to wave the normal 20 day filing timeframe in which to submit a complaint if the offender presents documentation of their attempts to resolve a conflict through a contractor's review process and allows the coordinator to photocopy the documentation for the grievance record.  *Id.*

Offenders have five working days from the time they receive a response to Level I and II grievances to appeal.  *Id.*, Exhibit 1, ¶ 9. An offender cannot appeal a Level III decision. An offender who wants to appeal a response of "non-emergency" to an Emergency Grievance must do so within1 hour of receiving a response.  Also, an inmate must file his grievance at the facility where the concerns arose.  He cannot file at another facility because staff does not have jurisdiction over any other facility. The DOC's grievance system is well known to inmates; currently over 20,000 grievances are filed per year system wide.  *Id.*

Mr. Caldwell states that Mr. Eckard's allegations regarding improper staff misconduct are grievable issues under the DOC grievance system.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 10.  According to Mr. Caldwell's computer search for grievances between January 1, 2000 and September 30, 2013, Mr. Eckard filed at least 45 grievances, demonstrating that his awareness of the OGP and its requirements at the time the events in the complaint occurred.  *Id.*

REPORT AND RECOMMENDATION - 4

**B.      Plaintiff's Claims**

For the period of time from October 2013 through January 2014, Mr. Eckard alleges:

That on multiple occasions Cheryl Roiko has requested a conditions of confinement modification for a "strip cell," and on multiple occasions Patrick Glebe authorized a conditions of confinement modification to a "strip cell" for reasons that did not conform to established DOC policy or Wa State law.  That during each "strip cell" confinement I was housed in a holding cell 2 with nothing other than a smock, a blanket, and a rubber matt. I was not given or permitted basic hygiene implements, and when housed in holding cell 2 during the course of one week I was not given a ten minute shower and shave until the end of the week although I am entitled by policy and law to such activity three times per week.

That the dimensions of the holding cell are 7 x 5 ft., and that one corner of the cell is occupied by a toilet/sink fixture and it's plumbing equipment, and there is a dirty drain in the center of the floor, providing non sanitary space in which to sleep, and that Roiko placed me in the holding cell with culpable indifference to my health and safety, and there is no window in the cell as the holding cells were not designed to intended to house inmates.

That during each period of confinement in holding cell 2 I was not given an opportunity to exercise outside of my cell as required by established DOC policy and WA State law.

Dkt. 16 (Plaintiff's Amended Complaint) at 5, 7-8.

For the period of time from April 2, 2014 through April 11, 2014, Mr. Eckard alleges:

That on April 4, 2014 William Swain requested authorization to modify my conditions of confinement to a "strip cell" for reasons that did not conform to established policy or WA State law, and that Patrick Glebe authorized a C.O.C. modification to a "strip cell" for reasons that did not conform, to established policy or state law.

That the C.O.C. modification directed the removal of standard issue clothing, bed, bedding, and basic hygiene implements, as well as writing materials, thereby depriving me of intra-prison communication, and that the C.O.C. modification was set to last for seven days.

That during the course of the C.O.C. modification, no daily cell check was conducted to address any immediate communication needs as required by established policy, and therefore, no such daily check had been recorded in the unit log as required by policy and state law.

REPORT AND RECOMMENDATION - 5

That on April 2, 2014 William Swain issued a security enhancement to place me on paper restriction until my release from SCCC, an act that is not authorized by established policy or state law.

That during the first three days of the "strip cell" confinement the nutritional quantity of my food was reduced, and that in protest I had flooded my cell on each day I did not receive a complete dinner that was served on third shift at approx. 16:40.

…

That on April 6, 2014, I repeatedly reported to the South F-Unit booth officer that I was suicidal and intended to harm myself with a metal object, to wit, a staple, and that no precautions were taken to prevent self-harm.

That Jon Green and Bruce Reifenberg were assigned to South F-Unit as floor officers on April 6, 2014, and were required to conduct a cell check every 30 minutes, per policy, and that I repeatedly told them that I was feeling suicidal and would attempt suicide.

That I used a metal staple to dig into my arm over the course of several hours and also attempted to cut my wrist.

That when Jon Green and Bruce Reifenberg saw blood running down and covering my arm, no precautions were taken to prevent self-harm, and that if I had succeeded in cutting my wrist open I would have died.

Dkt. 16 at 4-5, 9-11.

For the period of time from June 2, 2014 through June 9, 2014, Mr. Eckard alleges:

That at the time of the incident, I was housed in Unit-F, Cell B10, South, of Stafford Creek Corrections Center (SCCC).

That William Swain requested authorization to modify my conditions of confinement to a "strip cell" for reasons that did not conform to policy of Washington State law.

That Patrick Glebe approved a conditions of confinement modification to a "strip cell" for reasons that did not conform to DOC policy or Washington State law. That the five conditions of confinement (C.O.C.) modification directed the removal of standard issue clothing, bed, bedding, and basic hygiene implements. It also directed the removal of writing materials, thereby depriving me of any communication and access to the use of kites, medical kites, and grievance forms.

REPORT AND RECOMMENDATION - 6

That the period of the C.O.C. modification was from June 2, 2014 through June 9, 2014, and that upon termination, William Swain had requested higher level authorization to continue the modification for another seven days; authorization that was subsequently denied.

That during the period of the "strip-cell" confinement no daily cell check was conducted to address any immediate communication needs as required by DOC policy and state law, and that a daily cell check consists of a supervisor establishing verbal contact with an inmate for the purposes of addressing his communication needs.

Dkt. 16 at 2-3.

For the period of time from October 1, 2014 through October 3, 2014, Mr. Eckard alleges:

That on October 1, 2014, William Swain had requested authorization to modify my C.O.C. to a "strip-cell" for reasons that did not conform to established policy and WA state law, and that Patrick Glebe had authorized a C.O.C. modification to a 'strip-cell' for reasons that did not conform to established DOC policy and state law.

That the C.O.C. modification directed that I be housed in holding cell 2, the dimensions of which were 7x5 ft., and one corner of the cell was occupied by a toilet/sink fixture along with its plumbing equipment, and that there is a dirty drain in the center of the floor; allowing me no sanitary space to sleep, that there is no window in the cell and the cell is not designed or intended to house inmates.

That I was left in the holding cell from Oct 1, 2014 through Oct 3, 2014 and the only items afforded me was a smock, a blanket, and a rubber mat, and that I was left without basic hygiene impliments" [sic].

That no daily cell check was conducted by supervisory staff to address my communication needs as required by established policy and WA state law, and therefore no such cell check was recorded in the unit logs, as also required.

Dkt. 16 at 8-9.

**C.    Plaintiff's Grievances**

According to Mr. Caldwell, Mr. Eckard filed five grievances regarding the events in the Amended Complaint during the period from October 2013 through January 2014.  Dkt. 25-1,

REPORT AND RECOMMENDATION - 7

Exhibit 1, Caldwell Decl., ¶ 13. Exhibit 1, ¶ 13-18, Attachment D, grievance packet for Log Id. 13548726; Attachment E, grievance packet for Log Id. 13548727; Attachment F, grievance packet for Log Id. 13548898; Attachment G, grievance packet for Log Id. 13552119; Attachment H, grievance packet for Log Id. 14552807.

Mr. Eckard filed twelve grievances regarding the events in the Amended Complaint during the April 2, 2014 through April 11, 2014 period.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶¶ 20-32; Attachment I, grievance packet for Log Id. 14559698; Attachment J, grievance packet for Log Id.14559704; Attachment K, grievance packet for Log Id.14559706; Attachment L, grievance packet for Log Id. 14559707; Attachment M, grievance packet for Log Id. 14559708; Attachment N, grievance packet for Log Id. 14559709; Attachment O, grievance packet for Log Id. 14559710; Attachment P, grievance packet for Log Id. 14559711; Attachment Q, grievance packet for Log Id. 14559712; Attachment R, grievance packet for Log Id. 14559713; Attachment S, grievance packet for Log Id. 14559714; Attachment T, grievance packet for Log Id. 14560866.

Mr. Eckard filed five grievances regarding the events in the Amended Complaint during the June 2, 2014 through June 9, 2014 period.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶¶ 34-39; Attachment U, grievance packet for Log Id. 14564327; Attachment V, grievance packet for Log Id. 14564330; Attachment W, grievance packet for Log Id. 14566224; Attachment X, grievance packet for Log Id. 14567340; Attachment Y, grievance packet for Log Id. 14574048.

Mr. Eckard filed three grievances regarding the events in the Amended Complaint during the October 1, 2014 through October 3, 2014 period.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶¶ 41-44; Attachment Z, grievance packet for Log Id. 14572177; Attachment AA, grievance packet for Log Id. 14572180; Attachment BB, grievance packet for Log Id. 14574494.

REPORT AND RECOMMENDATION - 8

**STANDARD OF REVIEW**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).  A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law.  *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial."  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint.  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

**DISCUSSION**

To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law, (2) and his conduct must have

deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 975 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed.

**A.     Exhaustion of Administrative Remedies**

Before a prisoner may bring a civil rights action under 42 U.S.C. § 1983, he must first exhaust all his available administrative remedies. The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e(a) provides that: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted". Exhaustion in cases covered by § 1997e(a) is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). All "available" remedies must be exhausted. *Id.* Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is still a prerequisite to suit. *Id.,* 532 U.S. at 741. Claims that are not exhausted under the PLRA must be dismissed, not stayed. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

Defendants' evidence reflects that Mr. Eckard has failed to properly exhaust available administrative remedies for all but one of the claims asserted in his Amended Complaint although he was well aware of the grievance process at all times relevant to his Amended Complaint. From January 1, 2000 through September 30, 2013, Mr. Eckard filed at least 45 grievances. Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 10.

REPORT AND RECOMMENDATION - 10

In his Amended Complaint, Mr. Eckard makes allegations regarding four distinct periods of time: October 2013 through January 2014; April 2, 2014 through April 11, 2014; June 2, 2014 through June 9, 2014; and October 1, 2014 through October 3, 2014.  Dkt. 16.

### 1.    OCTOBER 2013 to JANUARY 2014

For the period of time from October 2013 through January 2014, Mr. Eckard filed five grievances regarding the events in the Amended Complaint.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 13.  These grievances were filed under Grievance Log Id. Nos.: 13548726, 13548727, 13548898, 13552119, and 14552807.  *Id.*

### a.    Adequate Yard Time - October 2013 through January 2014

On October 24, 2013, Mr. Eckard filed an emergency grievance, Grievance Log Id. 13548726, claiming that Defendant C/O Reiffenberg was refusing to give Mr. Eckard his mandatory yard time.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 14. The Stafford Creek Corrections Center (SCCC) grievance coordinator responded saying that the isolation dates met Washington Administrative Code (WAC) code.  Mr. Eckard did not appeal this response above Level 0.  *Id.*, Attachment D.  Therefore, Mr. Eckard did not properly exhaust his administrative remedy for this claim.

On October 26, 2013, Mr. Eckard filed Grievance Log Id. 13548727 claiming that from 9/18/2015 to 10/25/2013, he had been denied his 3 days of yard time.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 15.  The SCCC grievance coordinator responded that he reviewed and confirmed that Mr. Eckard was receiving 72 hours of yard time between isolation sanctions.  Mr. Eckard did not appeal this response above Level 0.  *Id.*, Exhibit 1, ¶ 15; Attachment E. Therefore, Mr. Eckard did not properly exhaust his administrative remedy for this claim.

REPORT AND RECOMMENDATION - 11

On October 29, 2013, Mr. Eckard filed Grievance Log Id. 13548898 claiming that from 9/18/2015 to 10/25/2013, he had been denied his 3 days of yard time.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 16. The SCCC grievance coordinator responded that sanctions have their own appeals process and that this issue was not grievable.  *Id.,* Attachment F.  Under the OGP, offenders may appeal a grievance coordinator's "not grievable" determination to the Grievance Program Manager.  *Id.*, Exhibit 1, Caldwell Decl., ¶ 8, Attachment B at 16.  Mr. Eckard did not appeal this determination of non-grievability.  For this reason, Mr. Eckard to not properly exhaust his administrative remedy for this claim. In addition, this grievance was a duplicate of Grievance Log Id. 13548727, which was also not properly exhausted.

Because Mr. Eckard did not exhaust his administrative remedies through the OGP for his claim that he was not given an opportunity to exercise outside of his cell (yard time) for the period from October 2013 to January 2014, this claim should be dismissed without prejudice.

### b.    Safety (Strip Cell) - October 2013 through January 2014

On December 22, 2013, Mr. Eckard filed Grievance Log Id. 13552119 claiming that from November 27, 2013 to December 4, 2013, he was placed in a holding cell in suicide conditions after a psychologist had determined he was not suicidal.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 17.  The SCCC grievance coordinator returned the grievance to Mr. Eckard because he would be over the limit of having five open grievances at a time per the OGP.  *Id.;* Attachment G.

Because Mr. Eckard did not abide by the limitations the OGP places on the number of grievances that an offender may have active at any one time, he did not properly exhaust his claim under Grievance Log Id. 13552119, which was returned to him because he would be over the limit of having five open grievances at a time per the OGP.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 17; Attachment G.

REPORT AND RECOMMENDATION - 12

Pursuant to the OGP, inmates may not abuse the grievance program by filing multiple grievances at one time. *Id.*; Attachment B at 25. Specifically, the OGP states:

> The vast majority of offenders who have used the program have done so in a responsible and mature manner. A comparatively small number of offenders, however, have elected to abuse the Offender Grievance Program by submitting numerous grievances or by submitting grievances of a malicious or threatening nature. The submission of many grievances by a few makes it difficult to conduct quality investigations and provide meaningful responses for all.

*Id.*, Exhibit 1, Caldwell Decl., Attachment A at 25. Further, under the OGP, offenders may not submit more than five new complaints per calendar week or have more than five active grievances and/or appeals. *Id.*, at 26. If an offender exceeds these limits, the Grievance Coordinator will return all materials, explain that the offender is over the limit and list all active log ID numbers. The program also permits offenders to withdraw up to five grievances/appeals per year in order to initiate new grievances. *Id.*

Mr. Eckard did not withdraw another grievance in order to submit Grievance Log Id. 13552119 even though he would have been permitted to do so under the OGP. In addition, by flooding the system with grievances to such an extent that he was over the five grievance limit in the OGP, Mr. Eckard did not comply with one of critical procedural rules in the OGP. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91.

On January 4, 2014, Mr. Eckard filed an emergency grievance, Grievance Log Id. 14552807, claiming that since January 2, 2014, he had been held in suicide precautions while being held in a holding cell. *Id.*, Exhibit 1, Caldwell Decl., ¶ 18. He claimed that these precautions were placed on him for past behavior and there were no self-harm concerns. The

REPORT AND RECOMMENDATION - 13

SCCC grievance coordinator responded at Level 1 stating that Mr. Eckard continued to refuse to follow IMU mainline procedures and had been using trash items to cover the light in his cell. Mr. Eckard did not appeal this response above Level 1. *Id.*, ¶ 18; Attachment H. Therefore, Mr. Eckard did not properly exhaust his administrative remedy for Grievance Log ID. 14552807.

Mr. Eckard's claim that he was improperly placed in suicide conditions from October 2013 through January 2014 should be dismissed without prejudice.

### 2.   APRIL 2, 2014 THROUGH APRIL 11, 2014

For the period of time from April 2, 2014 through April 11, 2014, Mr. Eckard filed twelve grievances regarding the events in the Amended Complaint. Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 20. These grievances were filed under Grievance Log Id. Nos.: 14559698, 14559704, 14559706, 14559707, 14559708, 14559709, 14559710, 14559711, 14559712, 1459713, 14559714, and 14560866. *Id.*

### a.   Safety (Strip Cell) - April 2, 2014 Through April 11, 2014

On April 3, 2014, Mr. Eckard filed an emergency grievance, Grievance Log Id. 14559710, claiming that he was in the no-contact visiting room to do some paperwork when he asked to go to the bathroom. Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 27. He was told if he left to go to the bathroom, his time in the no-contact visiting room would be done. He further complained that staff wanted to deny him a Bible, book, pen, mail, and paper permanently. *Id.* The SCCC grievance coordinator returned the grievance to Mr. Eckard because he would be over the limit of having five open grievances at a time per the OGP. *Id.*; Attachment O.

On April 3, 2014, Mr. Eckard filed an emergency grievance, Grievance Log Id. 14559712, claiming that a female staff member had come into the Pod where Mr. Eckard was housed without announcing her female presence. Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 28. Mr.

REPORT AND RECOMMENDATION - 14

Eckard claimed that, after this, he had covered his window when he undressed and was later put into strip cell conditions as a result of covering his window. *Id.* The SCCC grievance coordinator returned the grievance to Mr. Eckard because he would be over the limit of having five open grievances at a time per the OGP. *Id.;* Attachment Q.

On April 3, 2014, Mr. Eckard filed an emergency grievance, Grievance Log Id. 14559713, claiming that on April 1, 2014, he was placed into a strip cell for covering his window to ensure that female staff would not see him naked. Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 29. The SCCC grievance coordinator returned the grievance to Mr. Eckard because he would be over the limit of having five open grievances at a time per the OGP. *Id.*; Attachment R.

On April 3, 2014, Mr. Eckard filed an emergency grievance, Grievance Log Id. 14559714, claiming that C.U.S. William Swain had issued a security enhancement that limited Mr. Eckard's access to paper materials, mail, legal mail, books, and a Bible. Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 30. In his grievance, Mr. Eckard admitted that a C.U.S. may issue temporary changes to conditions of confinement. His complaint was that the C.U.S. could not permanently restrict access to these things. [1] The SCCC grievance coordinator returned the grievance to Mr. Eckard because he would be over the limit of having five open grievances at a time per the OGP. *Id.*; Attachment S.

The record reflects that Mr. Eckard did not withdraw another grievance in order to submit Grievance Log Ids. 14559710, 14559712, 14559713, or 14559714 even though he would have been permitted to do so under the OGP. In addition, by flooding the system with grievances to

---

[1] According to Defendants, the April claim that Defendant Swain permanently placed Mr. Eckard on paper restriction makes no sense because just two months later, a new request to modify Mr. Eckard's conditions of confinement was issued directing the removal of writing materials. Thus logically, sometime between April and June of 2014, Mr. Eckard must not have been on paper restriction so this restriction was not permanent.

REPORT AND RECOMMENDATION - 15

such an extent that he was over the five grievance limit in the OGP, Mr. Eckard did not comply with one of critical procedural rules in the OGP and therefore, did not properly exhaust these grievances.  Mr. Eckard provides no evidence to the contrary.

**b.    Daily Cell Check - April 2, 2014 Through April 11, 2014**

The record reflects that Mr. Eckard did not file a grievance regarding his allegation that no daily cell check was conducted to address his immediate communication needs for the period from April 2, 2014 to April 11, 2014.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶¶ 20-32. Mr. Eckard provides no evidence to the contrary.  Therefore, he did not exhaust his administrative remedies for this claim.

**c.    Flooded Cell - April 2, 2014 Through April 11, 2014**

On April 2, 2014, Mr. Eckard filed an emergency grievance, Grievance Log Id. 14559704, stating, "I am in a flooded cell and it is unsanitary and under the law it is cruel and unusual punishment."   Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 22.  The grievance was determined not to meet the requirements for an emergency grievance, however, the lieutenant who made that determination did note that Mr. Eckard was provided cleaning gear.  *Id.*  The SCCC grievance coordinator returned the grievance to Mr. Eckard because he would be over the limit of having five open grievances at a time per the OGP.  *Id.*; Attachment J.

On April 2, 2014, Mr. Eckard filed a second emergency grievance, Grievance Log Id. 14559706, stating, stating that he was being left in a flooded cell in unsanitary conditions.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 23.  The SCCC grievance coordinator returned the grievance to Mr. Eckard because he would be over the limit of having five open grievances at a time per the OGP.  *Id.*; Attachment K.

REPORT AND RECOMMENDATION - 16

The record reflects that Mr. Eckard did not withdraw another grievance in order to submit Grievance Log Ids. 14559704 and14559706 nor did he comply with the five grievance critical procedural rule for these grievances.  He provides no evidence to the contrary.  Therefore, he did not properly exhaust these two grievances.

### d.       Inadequate Food  - April 2, 2014 Through April 11, 2014

On April 3, 2014, Mr. Eckard filed an emergency grievance, Grievance Log Id. 14559711, claiming that staff had given him a regular mainline security sack for dinner instead of a Kosher security sack.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 28.  The SCCC grievance coordinator returned the grievance to Mr. Eckard because he would be over the limit of having five open grievances at a time per the OGP.  *Id.*; Attachment P.

On April 4, 2014, Mr. Eckard filed an emergency grievance, Grievance Log Id. 14559709, claiming that he was not served breakfast and was not offered breakfast.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 26.  The lieutenant reviewing the grievance determined that it did not meet the requirements for an emergency grievance, but he noted, "Sgt. Ronny Matsen stated offender Eckard refused both breakfast and lunch when offered".  *Id.*  The SCCC grievance coordinator returned the grievance to Mr. Eckard because he would be over the limit of having five open grievances at a time per the OGP.  *Id.*; Attachment N.

On April 5, 2014, Mr. Eckard filed an emergency grievance, Grievance Log Id. 14559708, claiming that staff had incorrectly reported the number of meals that Mr. Eckard had refused.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 25.  He claimed that he was on his 12th meal refusal and staff had only documented seven meal refusals.  It was determined that the grievance did not meet the requirements of an "emergency" grievance but the lieutenant who made that determination also noted that documentation showed Mr. Eckard was in his sixth meal refusal.

REPORT AND RECOMMENDATION - 17

*Id.*  He noted further, "LPN Wright will conduct a medical evaluation now and medical staff will continue to check throughout the duration of the offender's refusal to participate in the food service program".   The grievance was returned to Mr. Eckard because he would be over the limit of having five open grievances at a time per the OGP.  *Id.*; Attachment M.

On April 6, 2014, Mr. Eckard filed an emergency grievance, Grievance Log Id. 14559707, claiming that he had been served a non-Kosher meal.  Dkt. 25-1 Exhibit 1, Caldwell Decl., ¶ 24. The grievance was determined not to meet the requirements for an emergency grievance, however, the lieutenant who made that determination did note, "[p]er Sgt. Lopez food service was contacted and confirmed that the meal received was a security Kosher meal".  *Id.* The SCCC grievance coordinator returned the grievance to Mr. Eckard because he would be over the limit of having five open grievances at a time per the OGP.  *Id.*; Attachment L.

The record reflects Mr. Eckard did not withdraw another grievance in order to submit Grievance Log Ids. 14559707, 14559708, 14559709 and 14559711 nor did he comply with the five grievance critical procedural rule for any of these grievances.  Therefore, he did not properly exhaust these four grievances.  In addition, the Court notes that because Mr. Eckard's own grievances show that he was intentionally refusing food and he makes no claim as to detrimental health consequences, he has stated no constitutional violation.

### e.    Self-Harm - April 2, 2014 Through April 11, 2014

On April 2, 2014, Mr. Eckard filed an emergency grievance, Grievance Log Id. 14559698, claiming that he had pushed his call button and told the DOC staff members that he was suicidal but C/O Evans and "floor staff" let him bleed and did nothing to stop him from committing self-harm. Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 21.  Mr. Eckard also stated that he cut his wrists and could have bled to death and no one would have saved his life.  It was

REPORT AND RECOMMENDATION - 18

determined that the grievance did not meet the requirements for an emergency grievance.  The SCCC grievance coordinator responded to the Level 1 grievance stating, "[y]our complaint was investigated and it has been concluded that your inappropriate behavior as well as your medical evaluation were thoroughly documented. No evidence was found to support your claim".  *Id.* Mr. Eckard did not appeal this response above Level 1.  *Id.*; Attachment I.  Therefore Mr. Eckard did not exhaust this grievance.

The record reflects that Mr. Eckard filed no other grievances during this period regarding DOC staff members refusing to take precautions to prevent Mr. Eckard from harming himself. Therefore, he failed to exhaust his Eight Amendment deliberate indifference claim against Defendants Jon Green and Bruce Reifenberg and that claim must be dismissed.

### 3.   JUNE 2, 2014 THROUGH JUNE 9, 2014

For the period of time from June 2, 2014 through June 9, 2014, Mr. Eckard filed five grievances regarding the events in the Amended Complaint.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 34. These grievances were filed under Grievance Log Id. Nos.: 14564327, 14564330, 14566224, 14567340, and 14574048. Exhibit 1, ¶ 34.

### a.   Safety (Strip Cell) - June 2, 2014 Through June 9, 2014

On June 9, 2014, Mr. Eckard filed an emergency grievance, Grievance Log Id. 14564327, claiming that a security enhancement had been issued to deprive him of his legal right to have writing material and that this was a breach of policy.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 35. The SCCC grievance coordinator responded at Level 1 stating: "[y]our complaint had been investigated and it has been concluded that due to your behavior COC's (conditions of confinement) or security enhancements were required for reasons of safety and security.  These COC's were reviewed and approved.  No evidence was found to substantiate your allegations of

REPORT AND RECOMMENDATION - 19

a breach of policy." *Id.* Mr. Eckard did not appeal this response above Level 1. *Id.*; Attachment U. Therefore, the record reflects that Mr. Eckard did not exhaust his administrative remedies regarding this claim. He provides no evidence to the contrary.

On June 10, 2014, Mr. Eckard filed an emergency grievance, Grievance Log Id. 14564330, claiming that he had been placed in strip cell conditions due to his refusal to participate in a strip search and that later, on June 9, 2014, the C.U.S. tried to extend the C.O.C. modifications after several days of perfect behavior. Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 36. In the "suggested remedies" section of the grievance, Mr. Eckard said, "[h]eadquarters refused to extend the C.O.C. past 9-9, and the following day the associate superintendent personally removed the security enhancement, however, the C.U.S. should still be reprimanded". The SCCC grievance coordinator returned the grievance to Mr. Eckard because he would be over the limit of having five open grievances at a time per the OGP. *Id.;* Attachment V.

On July 9, 2014, Mr. Eckard filed an emergency grievance, Grievance Log Id. 14566224, claiming:

> From 6-2 to 6-9 I was placed in a strip cell in violation of DOC Policy 320.255. I was placed in a strip cell for failing to stand for search. Strip cell conditions for failing to stand for search is not supported by DOC Policy 320.255 (V)(A)(1) & (2). Also during this time there was never a daily check performed by a Supervisor to address any immediate communication needs as required by DOC Policy 320.255 (V)E. Also no such daily required cell check was ever recorded as required by DOC Policy 320.255 (X)(A)(5). Also, every single time I was placed in strip cell conditions in the past where there was no concern of self-harm, has been a violation of DOC Policy 320.255. When someone covers their window with paper, that person may not be placed in strip cell conditions and to do so is not supported by Policy 320.255 (V)(A)( 1 ): "The activity or item is currently a risk to staff or the offender's safety or to the security and orderly operation of the IMU/ITU/Segregational Unit/Mental Health Segregation Unit." Notice that the language does not authorize the removal of all items for the misuse of only one item, nor can one stretch the meaning to allow for strip cell conditions. Every time my meal program has been modified, it has also been a violation of DOC Policy 320.255 and will be addressed in a separate grievance.

REPORT AND RECOMMENDATION - 20

Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 37; Attachment W at 10.  Mr. Eckard appealed this

grievance to Level II. Superintendent Grebe responded to Mr. Eckard's Level II appeal stating:

> Your Level 2 grievance was investigated by CUS Cherry and reviewed by
> Associate Superintendent Van Ogle. CUS Swain was interviewed as well.
> Arrangements were made to come meet with you on 7-29-14 and when he came
> to F-Unit to meet with you, you refused the meeting.
>
> Based on the information obtained, SCCC was following DOC Policy 320.255,
> when they modified your conditions due to your behavior while in the IMU.  The
> Level 1 response is correct.  The modifications were made due to your behavior
> and the appropriate paperwork had been submitted and approved.  Due to your
> refusal to talk with Mr. Cherry regarding this issue, no further actions will be
> taken involving this complaint.  The Level 2 investigation concurs with the Level
> 1 response.
>
> In accordance with the Offender Grievance Program Manual (OGPM), you are
> required to participate in the investigation/resolution process.  This complaint has
> been administratively withdrawn in accordance with the OGPM for your refusal
> to be interviewed by the Level 2 investigator.

*Id.*, Exhibit 1, ¶ 37; Attachment W at 11.  Mr. Eckard made two subsequent attempts to appeal

the Level II response but both were administratively withdrawn due to Mr. Eckard's failure to

participate in the Level II investigation.  *Id.*, Exhibit 1, Caldwell Decl., ¶ 37.

On October 23, 2014, Mr. Eckard filed Grievance Log Id. 14574048, claiming that from

June 2, 2014 through June 9, 2014, he was placed in strip cell modification without justification

and that this violated policy and law. Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 39.  The SCCC

grievance coordinator returned the grievance to Mr. Eckard as non-grievable because he filed the

grievance beyond the timeframe of 20 working days from the date of an incident.  Mr. Eckard

did not appeal the non-grievable determination.  *Id.*; Dkt. 25-2 (Attachment Y).

The record reflects that Mr. Eckard failed to properly exhaust Grievance Log Ids.

14566224 and 14574048.  He provides no evidence to the contrary.  Additionally, there is no

REPORT AND RECOMMENDATION - 21

evidence from which it may be determined that Mr. Eckard is exempt from the requirement that a grievant participate in the investigation of his own grievance or the requirement that a grievant file his grievance within 20 working days of the from the date of the incident.  Therefore, these claims should be dismissed.

### b.    Cell Check  - June 2, 2014 Through June 9, 2014

Defendants concede and the record reflects that Mr. Eckard properly exhausted his cell check claim for the period from June 2, 2014 to June 9, 2014 by appealing Grievance Log Id. 14567340 to Level III.

The sole claim that Mr. Eckard exhausted was his cell check claim for the period from June 2, 2014 to June 9, 2014. There, Mr. Eckard appealed Grievance Log Id. 14567340 to Level III.   In that grievance, Mr. Eckard stated:

> From June 2nd through June 9th 2014, I was on paper restriction.  During this time there was never a daily cell check performed by a supervisor to address any immediate communication needs.  Also, no such required daily cell checks have been recorded in the unit log. This is a clear violation of policy and my civil rights. DOC Policy 320.255 (V) E clearly states that, "When an offender is placed on pen and/or paper restriction, supervisory staff will conduct a daily cell check to address any immediate communication needs (i.e. assistance with grievance, medical emergency, legal needs)."  Furthermore, DOC Policy 320.255 (X) (A)(5) requires that staff, "Document walk throughs and daily cell checks including checks by supervising staff for inmates on pen/paper restriction."

Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 38; Dkt. 25-2, Attachment X at 3.

The Level II response by Superintendent Glebe explains:

> Per DOC 320.255, a supervisor will conduct a daily cell check to address any immediate communication needs of offenders who are on paper/pen restriction. Communication needs checks may be done in conjunction with regular cell checks.  There is no policy requirements [sic] stipulating they will be done separately.  According to your unit log from May 29th to June 9th, 2014 (the days you indicate you were on paper/pen restriction) staff conducted a total of 34 cell front checks, with multiple cell checks being done each day. This exceeds policy requirements for a daily communication needs cell check.

REPORT AND RECOMMENDATION - 22

Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 38; Dkt. 25-2, Attachment X at 8.  So Mr. Eckard's real

complaint is that DOC staff are completing both a regular cell check and a communication cell

check at the same time.  He provides no authority suggesting that by performing these duties at

the same time violates his constitutional rights.  This claim should be dismissed with prejudice.

### 4.     OCTOBER 1, 2014 THROUGH OCTOBER 3, 2014

For the period of time from October 1, 2014 through October 3, 2014, Mr. Eckard filed

three grievances regarding the events in the Amended Complaint.  Dkt. 25-1, Exhibit 1, Caldwell

Decl., ¶ 41. These grievances were filed under Grievance Log Id. Nos.: 14572177, 14572180,

and 14574494.  *Id.*

#### a.     Safety (Strip Cell) - October 1, 2014 Through October 3, 2014

On October 1, 2014, Mr. Eckard filed an emergency grievance, Grievance Log Id.

14572177, claiming that he had been placed on suicide modifications and in a strip cell without

justification.  Dkt. 25-1, Exhibit 1, Caldwell Decl., ¶ 42. The grievance was processed as a

normal grievance.  The SCCC grievance coordinator responded stating, "you are on housing

modification that have been approved by Supt. Glebe due to your behavior this morning".  *Id.*

Mr. Eckard did not appeal this response above Level 0.  *Id.*; Dkt. 25-2, Attachment Z.

On October 1, 2014, Mr. Eckard filed an emergency grievance, Grievance Log Id.

14572180, claiming that staff sprayed tear gas into his cell with no provocation and that he was

currently being denied clothing and bedding in violation of the W.A.C.  Dkt. 25-1, Exhibit 1,

Caldwell Decl., ¶ 43. The grievance was processed as a normal grievance.  The SCCC grievance

coordinator responded stating, "[y]our complaint was investigated and it has been concluded that

the Use of OC and your modifications were warranted by your behavior and within policy

REPORT AND RECOMMENDATION - 23

guidelines.  All use of force incidents however are reviewed by the facility Captain and all possible options are considered for future options".  *Id.*  Mr. Eckard did not appeal this response above Level 0.  *Id.*, Attachment AA.

On October 29, 2014, Mr. Eckard filed Grievance Log Id. 14574494, claiming that on October 1, 2014, he was placed in strip cell modification without justification.  Dkt. 25-1, Exhibit 1, ¶ 44.   The SCCC grievance coordinator returned the grievance to Mr. Eckard as non-grievable because he believed it was duplicative of Grievance Log Id. 14574062.  *Id.*  Mr. Eckard did not appeal the non-grievable determination.  *Id.*, Attachment BB.

The record reflects that Mr. Eckard did not properly exhaust Grievance Log Id. Nos.: 14572177, 14572180, and 14574494.  Mr. Eckard provides no evidence to the contrary and therefore, these claims should be dismissed without prejudice.

Mr. Eckard argues that: (1) he did not have access to the grievance program because he was in strip-cell confinement; (2) he did not have to exhaust because the grievance program does not provide monetary or injunctive relief; and (3) the grievance limit was not sufficient to allow him to exhaust.   As noted above, Mr. Eckard's claim that he could not file grievances because he was on strip-cell confinement is contradicted by the record, which shows that he repeatedly filed or attempted to file grievances during the relevant time period (including issues relating to his strip-cell confinement).  Dkt. 25-1, at p. 76.   The record also reflects that Mr. Eckard did not pursue the grievances to the final level of review or had reached the grievance limit.

Mr. Eckard also argues that he was not required to exhaust because the Offender Grievance Program does not provide monetary or injunctive relief.  This argument is foreclosed by *Booth v. Churner*, 532 U.S. 731, 739 (2001).

REPORT AND RECOMMENDATION - 24

1    Finally, Mr. Eckard argues that he could not exhaust because the "civil rights violations

2    were so frequent" that the grievance limit was not reasonable.  Dkt. 30.  The PLRA requires

3    proper exhaustion and an inmate must comply with the grievance rules established by prison

4    officials.  *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  The DOC has a rule limiting an offender

5    to five active grievances and to five new grievances in a calendar week.  Dkt. 25-1, at p. 54.

6    Thus, Mr. Eckard was required to exhaust while complying with this rule.   Moreover, Mr.

7    Eckard provides no evidence about the nature of his other grievances.  The record reflects that

8    Mr. Eckard files a large number of grievances in rapid succession and often does not appeal

9    adverse decisions to the next level. Many of his grievances were duplicative or repetitive.  *See

10   e.g.*, Dkt. ECF No. 25, at p. 10 (identifying two grievances about being denied yard time for 3

11   days).

12          Because Mr. Eckard failed to exhaust his administrative remedies relating to the

13   foregoing claims, they must be dismissed without prejudice.

14   **B.     Qualified Immunity**

15          Defendants also contend that they are entitled to qualified immunity.  Prison officials are

16   "shielded from liability for civil damages insofar as their conduct does not violate clearly

17   established statutory or constitutional rights of which a reasonable person would have known."

18   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In analyzing a qualified immunity defense, the

19   Court must determine: (1) whether a constitutional right would have been violated on the facts

20   alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the

21   right was clearly established when viewed in the specific context of the case.  *Saucier v. Katz*,

22   533 U.S. 194, 201 (2001).  "The relevant dispositive inquiry in determining whether a right is

23   clearly established is whether it would be clear to a reasonable officer that his conduct was

REPORT AND RECOMMENDATION - 25

1  unlawful in the situation he confronted." *Id*.  In analyzing a qualified immunity defense, courts

2  are "permitted to exercise sound discretion in deciding which of the two prongs of the qualified

3  immunity analysis should be addressed first in light of the circumstances in the particular case at

4  hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

5      As noted above, the Court finds that Mr. Eckard has failed to present a triable issue of

6  fact as to his claims against Defendants and therefore, the Court need not further address the

7  issue of qualified immunity.

8                                     **CONCLUSION**

9      The undersigned recommends that Defendants' motion for summary judgment (Dkt. 25)

10  be **Granted;** Plaintiff's unexhausted claims should be **dismissed without prejudice** for failure

11  to exhaust; his exhausted claim relating to cell checks (June 2, 2014 to June 9, 2014) should be

12  **dismissed with prejudice.**

13      Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

14  fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P.

15  6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.

16  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the

17  Clerk is directed to set the matter for consideration on **October 23, 2015**, as noted in the caption.

18      **DATED** this   5th   day of October, 2015.

19

20

21

22

23                                     Karen L. Strombom
                                       United States Magistrate Judge
24

25

26

REPORT AND RECOMMENDATION - 26